**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

ALICIA R. OHMART,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        Case No. 4:13-CV-00267-NKL
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner                  )
of Social Security,                  )
                                     )
        Defendant.                   )

**ORDER**

Before the Court is Plaintiff Alicia R. Ohmart's appeal of the Commissioner of

Social Security's final decision denying her application for supplemental security income

(SSI). The Commissioner's decision is affirmed.

**I.      Background**

Ohmart was born in April 1976. She completed the tenth grade and has work

experience as a fast food worker, caring for plants at a green house, and filling vending

machines. Her lifetime earnings total about $9,900.

Ohmart alleges she became disabled beginning in July 2006 when she was hurt at

work. She filed her application for SSI on August 27, 2010. [Tr. 182.] To be eligible for

SSI under Title XVI, a claimant must establish that she was disabled while her

application was pending. *See* 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330 and 416.335.

Thus, the relevant time period for Ohmart's SSI claim is August 27, 2010, the date she

filed her application, through March 23, 2012, the date of the Administrative Law

Judge's (ALJ's) decision.

## A. Medical Evidence

Ohmart suffered head trauma with concussion at her vending machine job in July 2006, when a television fell on her head. Her treatment included visits with Dr. James Zarr in late 2006 and January 2007. [Tr. 399-406.]

Dr. Dale Essmeyer saw Ohmart several times. Dr. Essmeyer diagnosed stress-related headaches in November 2010. [Tr. 1162.] In December 2010, in the context of helping Ohmart prepare paperwork related to her SSI application, he noted Ohmart to be obviously limited in motion from back pain, and that she had physical problems, but that her psychiatric problems were clinically more significant than her physical ones. [Tr. 1161.] In January 2011, Dr. Essmeyer found Ohmart to be getting along fairly or reasonably well, with pain stable and controlled a majority of the time, and anxiety fairly well controlled. [*Id.*] At a February 2011 visit, he noted she was getting along with her pain pretty well. [Tr. 1160.] At a March 2011 visit, he found she was getting along reasonably well with her medications, and noted her asthma had improved with inhalers and therapy. [Tr. 1153.] She saw him in April 2011, and twice in May 2011. At one of the May visits, Ohmart mentioned to him that she was going to Joplin to help a friend after the tornado. Dr. Essmeyer diagnosed chronic pain syndrome and performed osteopathic manipulation. [Tr. 1155.]

Ohmart was seen several times by a psychiatrist, Dr. Henry Wisdom. He ordered a sleep study in November 2009, which showed Ohmart required no supplemental oxygen, that her EEG had no significant abnormalities, and that she did not have sleep

apnea or need CPAP therapy. [Tr.1015-1020]. It showed REM sleep patterns consistent with sleep deprivation or withdrawal from a REM-sleep suppressing agent, or both. [Tr. 1003.] In December 2010, Dr. Wisdom felt Ohmart was stabilized, and continued her medications. [Tr. 1180.] He increased a sleep medication in February 2011. [Tr. 1181.] He saw her in March 2011 and renewed her medications in May, June, July and August 2011. [Tr. 1093/ 1100; 1102; 1183.] At the August 2011 visit, she asked to be seen every two months, but Dr. Wisdom wanted to continue to see her monthly because she was taking benzodiazapenes. [Tr. 1093-94.] At Ohmart's September and October 2011 visits, Dr. Wisdom continued her medications. [Tr. 1150-51.] At her November 2011 visit, Dr. Wisdom noted Ohmart's mood and affect were good and that "she seem[ed] to be holding her own." [Tr. 1149.] At her December 2011 visit, Dr. Wisdon adjusted a medication dosage. [Tr. 1148.]

Ohmart was seen at the Headache and Pain Center in August 2011 and twice in December 2011 for chronic neck and back pain, and was prescribed pain medications. [Tr. 1085-88; 1141-44.] Additionally, at the August 2011 visit, her judgment and insight, memory, mood, affect, fund of knowledge, and capacity for sustained mental activity were noted to be normal. [Tr. 1143-44.] At a December 2011 visit, a conditioning program was prescribed and all prior MRIs were noted to have been normal. [Tr. 144.]

### B. Opinion evidence

In January 2007, Dr. James Zarr concluded Ohmart was subject to the following restrictions: no lifting greater than 20 pounds and no overhead lifting. [Tr. 406.] He

noted that all findings on examination were subjective; there were no objective findings. [*Id.*] An MRI of her cervical spine was unremarkable. [*Id.*] The ALJ gave this opinion "some weight." [Tr. 19.]

Ohmart was seen at Occupational Consulting Services in March 2007 and diagnosed with chronic cervico-thoracic myofascitis, cervical strain, head contusion, and right shoulder strain. She was restricted to "modified" duties of no lifting greater than 10 pounds from waist to shoulder height on an occasional basis, and no overhead work with the right arm. [Tr. 500.] The note does not indicate how long she was restricted, and recommends a shoulder x-ray. [*Id.*] The ALJ did not identify the weight given this opinion.

Dr. Harden, a psychiatrist, and APRN Delores Lesseig examined Ohmart at the request of the Sullivan County Family Services in June 2007, for purposes of state disability evaluation. [Tr. 506.] Diagnoses included PTSD with dissociative and psychotic features, poly-substance abuse in remission, anxiety disorder, bipolar disorder by history, and borderline personality disorder. [Tr. 511.] Dr. Harden and APRN Lesseig completed a disability certification for the Missouri Department of Social Services, opining that Ohmart would be incapacitated for 6-12 months. [Tr. 513-14.] The ALJ gave this opinion "little" weight. [Tr. 20.]

Dr. Hutson completed a psychiatric review technique form in October 2007 in connection with Ohmart's prior SSI application; he did not examine or treat Ohmart. [Tr. 623-627.] Dr. Hutson noted Ohmart to have medically determinable impairments of bipolar disorder by history; PTSD with dissociative and psychotic features; borderline

personality disorder; and poly-substance abuse in remission.  [Tr. 623, 626-29.]  He opined that she had mild restriction of activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace, and that her impairments were "severe."  [Tr. 631-33.]

Dr. Hutson then completed a mental RFC, in which he opined, among other things, that Ohmart was moderately limited in the ability to work in coordination with or proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting.  [Tr. 635-36.]  He opined that Ohmart could understand, remember, and carry out simple instructions and complete routine tasks, may have difficulty adjusting to the environment of others in a work setting, and would do better in a low-stress work environment with few confrontations.  [Tr. 637.]  The ALJ did not identify the weight given this opinion.

Dr. Blachar, a pain management physician who had treated Ohmart, and wrote a letter in October 2008 in which he opined that she should not perform frequent activities requiring repeated reaching above her head, or lift more than 10 pounds, and noting she had flare-ups of her Crohn's and abdominal pain which cause her to miss work. [Tr. 863.]  He opined that she was capable of working 40 hours per week at a sedentary job.  [*Id.*]  The ALJ did not identify the weight given this opinion.

As noted in the prior section, Dr. Essmyer saw Ohmart in December 2008.  He opined that she could not maintain gainful employment due to her multitude of problems,

the major underlying factor being psychiatric.  [Tr. 963.]  The ALJ gave Dr. Essmyer's opinions "little" weight.  [Tr. 19.]

Dr. Bucklew completed a psychiatric review technique form in November 2010, noting medically determinable impairments of bipolar and anxiety disorders.  [Tr. 1054-55.]  He opined that Ohmart had mild restriction of activities of daily living, mild difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace.  [Tr. 1059.] He noted ability to remember, understand, and complete less demanding instructions with usual supervision and ongoing psychiatric treatment. ]Tr. 1062.]

Dr. Bucklew also completed a mental RFC, opining that Ohmart was moderately limited in the ability to understand, remember, and carry out detailed instructions, sustain an ordinary routine without special supervision, or get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  [Tr. 1063-64.]  The ALJ gave Dr. Bucklew's opinions "significant" weight.  [Tr. 20.]

### C.  Ohmart's function report, and testimony

Ohmart filled out a Function Report—Adult in August 2010. She wrote that she does dishes, some light dusting, and the laundry; makes the bed; prepares food or meals weekly or monthly; cares for her personal hygiene; gardens; attends to her finances; takes her children to the park; takes small walks to the park; spends time with people every day; and visits with friends and family. [Tr. 144-148.]  She indicated that she uses glasses, but not a brace or splint.  [Tr. 150.]

At the February 2012 hearing, Ohmart testified that she drives once or twice a

week to go to the doctor's office and grocery store [Tr. 35]; picks up her mother to go to the store [Tr. 48]; does the laundry [Tr. 47]; and visits her mother at her mother's home three or four times a month [Tr. 49].

### D. The ALJ's decision

The ALJ found that Ohmart's subjective complaints of disabling symptoms were not fully credible to the extent Ohmart claimed they rendered her totally unable to work. [Tr. 12-21.] While the ALJ found that the medical evidence showed Ohmart suffered from the severe impairments of cervical spondylosis, bipolar and anxiety disorders, and chronic pain syndrome/fibromyalgia, the ALJ rejected Ohmart's allegations that those impairments rendered her disabled within the meaning of the Act. [Tr. 12-21.] The ALJ found Ohmart's carpal tunnel syndrome, migraines, asthma, and Crohn's disease to be "non-severe" and Ohmart's fatigue not medically determinable. [Tr. 14.]

The ALJ found Ohmart had mild restriction of activities of daily living, mild difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace. [*Id.*] The ALJ noted that Ohmart cooks and cleans; cares for her personal hygiene; handles her finances; engages in social activities including taking her children to the park and visiting with family; drives; gardens; and has had no episodes of decompensation of extended duration. [Tr. 15.]

Following analysis of the evidence as a whole, including Ohmart's subjective allegations and the medical evidence, the ALJ incorporated into Ohmart's residual functional capacity [RFC] those impairments and limitations the ALJ found credible and supported by the overall record. [Tr. 16.] The ALJ found that Ohmart had the RFC to

perform sedentary work as defined in 20 C.F.R. § 416.967(a), in that she could lift and carry ten pounds occasionally and frequently, sit for six hours out of an eight-hour workday, and stand or walk for two hours out of an eight- hour workday. [*Id*.] The ALJ found that Ohmart could never climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs; she could occasionally stoop; and she could never kneel, crouch, or crawl. [*Id*.] The ALJ also found that Ohmart should avoid operational controls of moving machinery, unprotected heights, and hazardous machinery, and was able to perform simple, routine, repetitive tasks. [*Id*.]

Based on the testimony of a vocational expert, the ALJ found Ohmart could perform other work as a printed circuit board screener (DOT 726.684-110), administrative support worker (DOT 209.587-010—addresser), and pharmaceutical processor (DOT 559.687-034–egg processor). [Tr. 21.]

## II. Discussion

The Commissioner's findings are reversed "only if they are not supported by substantial evidence or result from an error of law. In this substantial-evidence determination, the entire administrative record is considered but the evidence is not reweighed. Substantial evidence is less than preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). "In determining whether existing evidence is substantial, [the Court] consider[s] evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). "If substantial evidence supports the Commissioner's conclusions, [the Court]

does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Byes*, 687 F.3d at 915.

Because the ALJ's decision is supported by substantial evidence, it is affirmed.

## A. Overhead reaching

Ohmart argues that the ALJ's RFC is invalid because the ALJ failed to include an overhead reaching limitation suggested in medical opinions, did not address certain opinions and failed to adequately develop the record concerning Ohmarts' physical impairments. [Doc. 11, pp. 18-20.]

The three opinions on which Ohmart relies concerning overhead reaching are Dr. Zarr's 2007 opinion (which the ALJ gave some weight); a 2007 Occupational Consulting Services evaluation (which the ALJ did not address); and Dr. Blachar's October 2008 letter (which the ALJ did not address). The three opinions were rendered two or three years prior to the relevant time period and nothing in the record covering the relevant time period indicates an overhead-reaching restriction is applicable. Therefore, these opinions do not undermine the RFC.

## B. Dr. Essmeyer's conclusion about Ohmart's ability to maintain gainful employment

Ohmart next argues that the ALJ erred when she afforded "little weight" to Dr. Essmeyer's 2008 opinion that Ohmart could not maintain gainful employment due to her multitude of problems, the major underlying factor being psychiatric. [Tr. 19.] The argument fails because whether a claimant can maintain gainful employment is a matter reserved to the Commissioner. In any event, this opinion was rendered outside the

relevant time period and the ALJ's decision to discount Dr. Essmeyer's opinion, is supported by substantial evidence, including Ohmart's daily activities that included caring for a child, driving, shopping, and performing household chores. [Tr. 19.]

Finally, the ALJ had no duty to recontact Dr. Essmeyer or further develop the record on this issue. Any requirement to supplement medical records pursuant to 20 C.F.R. § 416.912(e), was modified in February 2012, to permit ALJs more flexibility in determining how best to obtain information to resolve an inconsistency or insufficiency in the evidence, and allows an ALJ to go to another source for clarification. *See* 77 F.R. 10651-01 (Feb. 23, 2012) ("We are modifying the requirement to recontact your medical source(s) first when we need to resolve an inconsistency or insufficiency in the evidence he or she provided. Depending on the nature of the inconsistency or insufficiency, there may be other, more appropriate sources from whom we could obtain the information we need. By giving adjudicators more flexibility in determining how best to obtain this information, we will be able to make a determination or decision on disability claims more quickly and efficiently in certain situations."). There is no indication here that the ALJ found Dr. Essmeyer's opinion unclear. But even if she had, she was not required to recontact Dr. Essmeyer.

Ohmart cites *Fabela v. Astrue,* 2013 WL 353038 *1 (W.D. Mo. 2013), in which a court relied on SSR 96-5p (1996) to conclude that the treating physicians should have been contacted again. But that opinion did not address the modification of 20 C.F.R. § 416.912(e), and therefore does not persuade the Court that it would be applicable here.

## C. Psychological evaluations

Ohmart next argues that the ALJ should have discussed the opinion of Dr. Hutson which was rendered in October 2007 in connection with Ohmart's prior SSI application. In that opinon Dr. Hutson found that Ohmart had a moderate limitation in her social interaction and Ohmart contends this limitation was not addressed in the ALJ's RFC. However, Dr. Hutson's opinion was rendered outside the time period relevant to this appeal. Further, the record contains the opinion of Dr. Bucklew, a psychological consultant who prepared a mental RFC in November 2010 in connection with Ohmart's instant application. Dr. Bucklew opined that Ohmart had only mild limitations in her social interactions [Tr. 20.] The ALJ gave significant weight to Dr. Bucklew's conclusion that Ohmart was only mildly limited in her social interaction. The ALJ also found that Ohmart is generally described as pleasant and exhibiting adequate social skills; spends time with people every day; takes her children to the park; and spends time with friends and family. [Tr. 18.] Given the record as a whole, the ALJ's RFC is supported by substantial evidence, and the ALJ did not err by disregarding Dr. Hutson's opinion from a different relevant time period.

## D. The 2007 State disability determination

Ohmart's argument that the ALJ erred when she gave "little weight" to the 2007 opinion of Dr. Harden and APRN Lesseig also fails. They examined Ohmart for purposes of completing a disability certification for the Missouri Department of Social Services. Whether a claimant is disabled under state law is not binding on the Secretary; a decision about disability is a matter reserved to the Secretary. *Cruze v. Chater,* 85 F.3d

1320, 1325 (8th Cir. 1996); 20 C.F.R. § 416.912(e). In addition, the state standards they applied [*see* Tr. 513-517] are different from the standards applied to an SSI claim. Moreover, Dr. Harden and APRN Lesseig limited the duration of Ohmart's incapacity to 6-12 months [Tr. 513-14], which passed long ago.

### E. Remaining arguments

Ohmart argues that the ALJ committed error in determining that Ohmart's fatigue was not a medically determinable impairment; and that her carpal tunnel syndrome is "non-severe." [Tr. 14.]

At the second step of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that lasted or is expected to last for at least twelve months. *See* 20 C.F.R. §§ 416.909 and 416.920(a)(4)(ii). The impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques…and must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms [.]" *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011) (quoting 20 C.F.R. § 404.1508). A medically determinable impairment is "severe" if it more than minimally affects the claimant's ability to perform basic work activities, and "[i]t is the claimant's burden to establish that his [or her] impairment or combination of impairments are severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). While "[s]everity is not an onerous requirement for the claimant to meet,…it is also not a toothless standard, and

[the Eighth Circuit] ha[s] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id.* at 708.

Ohmart does not make any showing that her alleged fatigue is medically determinable. She did not mention it at the hearing. She points to a 2009 sleep study that the ALJ considered unremarkable. [Tr. 14.] The study showed Ohmart did not require supplemental oxygen or CPAP therapy or have sleep apnea, and that her EEG was normal. [Tr.1015-1020]. It did show REM sleep patterns consistent with sleep deprivation or withdrawal from a REM-sleep suppressing agent, or both. [Tr. 1003.] There is no evidence that the physican who ordered it or whom she saw the next several years treated her based upon the study. And Ohmart does not explain in what way additional RFC limitations, if any, are allegedly attributable to fatigue.

As for carpal tunnel syndrome, the ALJ acknowledged its mention in the record, but noted Ohmart did not receive any treatment for it during the relevant time period. [Tr. 14.] In her Function Report of August 2010, Ohmart was asked what assistive devices she used. She checked the box for glasses and left blank the box for braces or splints. [Tr. 150.] She did not describe problems related to carpal tunnel syndrome at the hearing. Whether Ohmart received treatment for carpal tunnel syndrome in 2008, from a physician who noted Ohmart "may be a symptom magnifier," [Tr. 852] is not evidence requiring reversal. The ALJ's conclusion that Ohmart's carpal tunnel syndrome was non-severe is supported by substantial evidence.

The Court has reviewed, and rejects, Ohmart's remaining argument that the ALJ failed to sufficiently consider her other non-severe impairments of migraines, asthma and

Chron's disease. [Doc. 11, pp. 23-24.] An ALJ has sufficiently considered impairments in combination when she has separately discussed each impairment. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011). Here, the ALJ specficially and separately discussed them and based her conclusion on substantial evidence. [Tr. 14.]

## III.  Conclusion

For the reasons set forth above, the Commissioner's decision is affirmed.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  April 28, 2014
Jefferson City, Missouri